# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JORGE L. COLÓN,                                )
                                               )
        Plaintiff,                    )
                                               )     Case No. 06 C 5214
        v.                            )
                                               )     Judge Joan B. Gottschall
ILLINOIS BELL TELEPHONE                        )
COMPANY d/b/a/ SBC/AMERITECH,                  )
                                               )
        Defendant.                    )

## MEMORANDUM OPINION & ORDER

Before the court is defendant Illinois Bell Telephone Company's ("IBTC's") motion for summary judgment. IBTC's motion is granted.

## I. BACKGROUND

The following facts are taken from the parties' statements of uncontested facts, and are undisputed unless otherwise stated. Plaintiff Jorge Colón was employed by IBTC from January 2001 until October 2005, when he was terminated. Colón sued, alleging that he suffered discrimination as a result of his national origin (Puerto Rican or Hispanic) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, that he was retaliated against for engaging in protected activity under Title VII, and that he was discriminated against on the basis of his disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12111, *et seq*.

While working at IBTC, Colón worked as a Sale and Service Representative—he answered phone calls from IBTC customers. At the location where Colón worked, Sale and Service Representatives were split into two groups: the Bilingual Group and the English-Only Group. Colón is fluent in English and Spanish, and was assigned to the Bilingual Group.

When Colón was originally hired, he handled calls from Spanish speakers only, and only from the state of Illinois. In 2003 Colón started being required to answer questions from callers who spoke either English or Spanish, and who resided in Illinois or in other states. These changes were not unique to Colón; Colón worked in the Bilingual Group, and these changes applied to all members of that group. In contrast, and as its label suggests, the English-Only Group answered calls only in English, and any member of that group would answer calls from one state only. From this, Colón contends that he and other members of the Bilingual Group had to work harder than the English-Only Group because they had to (1) answer calls in multiple languages, and (2) answer calls from multiple jurisdictions. This latter point is relevant because different states have different service plans, rules, notices, and regulations which may need to be relayed to the customer; Colón was required to answer calls from both Illinois and Ohio, but each required specific knowledge and training. However, and pursuant to a collective bargaining agreement, a Sales and Service Representative is paid the same irregardless of the group to which she is assigned; Colón was paid the same as an English-Only Group employee (though there was some pay variation, based on factors such as years of employment).

In June 2003, Colón suffered the traumatic death of his five-year-old son, who accidentally drowned while the family was on vacation. Colón was subsequently diagnosed with post-traumatic stress disorder ("PTSD") as a result of this incident. Colón was granted periods of both disability leave[1] and leave pursuant to the Family Medical Leave Act ("FMLA") from 2003 to 2005, including an extended period from November 4, 2004 through January 24, 2005.

Colón contends that after he returned to work on January 25, 2005, he continued to miss work periodically, and was suspended one day for missing work beyond that permitted by the

---

[1] The record is silent regarding the precise definition of "disability leave."

FMLA.  At some point in 2005, Colón submitted a letter from his therapist to IBTC, requesting an accommodation on account of his PTSD.  Colón requested a less stressful job.  This request was never formally granted or denied; IBTC contends that Colón failed to respond to requests for medical documentation, while Colón contends that he adequately responded and that IBTC acted improperly in failing to give him a less stressful job.

Colón performed his job adequately for approximately nine months starting in January 2005, except for the attendance problems noted above.  During this time, Colón contends that he received calls only from Illinois customers and did not have to answer any calls from other states; the reason for this—whether it was an intentional act by IBTC or whether it was just a random event—is unclear from the record.  At some point in later September or early October 2005, however, Colón received a call from a customer in Ohio.  He did not answer this caller's question, but instead returned the caller to the "queue," requiring that it be answered by another Sale and Service Representative.  Colón had previously been trained to handle calls from Ohio, but maintains that he was uncomfortable responding to calls from Ohio at that time.  Colón does not provide an explicit reason, but the inference suggested is that he was no longer familiar with the rules specific to answering calls from Ohio.

A meeting was held on October 7, 2005 regarding Colón's failure to answer calls from Ohio.  Representatives from IBTC, from the union, and Colón were in attendance.  The parties dispute precisely what was said at the meeting, but there is no dispute that Colón stated he did not believe it was fair that the Bilingual Group had to answer calls from multiple states without the benefit of additional compensation; and that he felt he could not properly answer Ohio calls both because of his PTSD and because he had not received Ohio calls for some time.  At that meeting, all agreed that Colón would receive refresher training on how to handle calls from Ohio, and would handle them

in the future. The union representative also stressed that Colón was obligated to answer calls from Ohio.

The refresher training was to occur on October 12, 2005, but on that date Colón refused to take the training, claiming that he was waiting to hear back from his union representative.[2] Colón was placed on unpaid suspension for insubordination on the same day he refused to take the refresher training. He was terminated on October 28, 2005, for the stated reason of insubordination. Colón contends that he was actually terminated either as a form of retaliation, or because of his PTSD diagnosis. He offers no particular evidence for the latter ground except that he was not given an alternative job when he requested one. Regarding the allegation of retaliation he cites the following facts: First, he wrote an "open letter" in 2004 arguing that the Bilingual Group was not being treated fairly and that it should either be paid more or be given work terms equal to those of the English-Only Group. This letter was circulated among co-workers and was sent to the union, though it was not directly sent to IBTC management. Second, during meetings in October 2005 regarding Colón's failure to answer the call from Ohio, Colón expressed directly to IBTC management that the Bilingual Group was not being treated fairly. Third, Colón stated in his deposition that his union representative warned him a month before he was terminated that he was "making things hard" for himself by speaking out about the injustices he perceived the Bilingual Group was suffering.

## II. ANALYSIS

Summary judgment is warranted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[2] Colón contends that his "refusal" to take the training is in dispute, but the only evidence he has put forth to show a dispute is his explanation for *why* he refused to take the training. There is no dispute that on October 12, 2005, when the training was to occur, he did not participate.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

## A.        Title VII Discrimination Claim

Title VII protects against discrimination on the basis of certain categories, including race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1); *Wolf v. Nw. Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001). The applicability of Title VII to *language* is not inherently obvious, for language is at best a proxy for national origin; it is not an automatic correlation. *See Hernandez v. New York*, 500 U.S. 352 (1991) (rejecting claim that juror exclusion on basis of ability to speak Spanish is *a fortiori* equivalent to striking on basis of ethnicity); *Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir.1983) (noting in equal protection context that "[l]anguage, by itself, does not identify members of a suspect class"); *Garcia v. Gloor*, 618 F.2d 264, 266 (5th Cir.1980) (same in English-Only Title VII case). Colón contends that he suffered discrimination on the basis of his national origin because of the changes in policy at IBTC in 2003 regarding the duties and obligations of the Bilingual Group. The record is silent regarding the national origin of the members of the Bilingual and English-Only Groups, and neither party had addressed this issue. The court will assume for the purposes of this order that the Bilingual Group is exclusively Hispanic and the English-Only Group is exclusively non-Hispanic, which could give rise to an assumption that discrimination on the basis of bilingual ability is a pretext for discrimination on the basis of national origin.

Title VII requires that the employee suffer a materially adverse employment action, regardless of whether the individual is proceeding under the direct or indirect method of proof.

*Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 691 (7th Cir. 2001). Colón suffered no materially adverse employment action by virtue of the treatment of the Bilingual Group. At worst, he was required to answer calls in multiple languages (as opposed to just one language as in the English-Only Group) and answer calls from multiple states (as opposed to just one state as in the English-Only Group). Colón admits that he was not required to work additional hours, and he admits that IBTC would (and did) provide training so that he would be able to answer calls from the states for which he was responsible. Unquestionably Colón's job was more challenging than was the job of a Sales and Service Representative in the English Only Group, but the additional obligations placed upon Colón are not sufficient, either "quantitative[ly] or qualitative[ly]," to qualify as a materially adverse employment action. *Haugerud*, 259 F.3d at 691. A materially adverse change must be more than an "inconvenience or a change in job responsibilities"; the change must "significantly alter[] the terms and conditions of the employee's job." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). Harder work assignments are insufficient. *See id.*[3] After the 2003 change in policy, the core aspects of Colón's job were the same: he was still obligated to answer calls in the order received. He was still working the same number of hours. He was still obligated to speak in a language in which he was fluent, and to answer questions for which he had received adequate training. Every adverse change in employment is not necessarily materially adverse under Title VII, and the facts here fall short of establishing a materially adverse action.

---

[3] In his memorandum opposing IBTC's motion, Colón also argues that he faced a materially adverse employment action when he was suspended and then terminated in October 2005. This is a new allegation; his Second Amended Complaint references the workload distinctions between the Bilingual and English-Only Groups only. Regardless, and as discussed in greater detail in the section below on retaliation, there is no evidence upon which a reasonable jury could rely to establish that Colón's suspension or termination occurred as a result of his national origin.

IBTC's motion for summary judgment on Colón's Title VII discrimination claim (Count I) is granted.

## B.     ADA Claim

Colón argues that he was denied a reasonable accommodation in violation of the ADA. Colón asked to have a less stressful job than his job as a member of the Bilingual Group.[4]  IBTC did not fulfill his request.  However, for the ADA to apply, Colón must be disabled.  *See Winsley v. Cook County*, 563 F.3d 598, 603 (7th Cir. 2009).  The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2); *Winsley*, 563 F.3d at 603.

Colón has a limitation: he has been diagnosed with PTSD.  Although a finding of a disability under the ADA can result from a PTSD diagnosis, *see, e.g.*, *Desmond v. Mukasey*, 530 F.3d 944 (D.C. Cir. 2008), a diagnosis alone does not automatically establish a disability.  Rather, the question is whether the particular limitation has caused a substantial limitation to a major life activity.  § 12102(2).  The life activity identified by Colón is working.  To show that the life activity of working has been substantially limited, "a plaintiff must show that the impairment 'significantly restricts the ability to perform a class of jobs or a broad range of jobs in various classes.' . . . An inability to perform a particular job for a particular employer is not sufficient to establish a substantial limitation on the ability to work; rather, the impairment must substantially limit employment generally."  *Id.* at 604 (quoting *Skorup v. Modern Door Corp.*, 153 F.3d 512, 514 (7th Cir. 1998)).  Colón has provided no evidence that his PTSD diagnosis has made him generally incapable of working.  Indeed, the accommodation he requests—a less stressful job—belies his own

---

[4] Colón's request is somewhat ambiguous.  Though he states that he wants a reasonable accommodation, he also states that he would have been satisfied with his current job if he were given a higher salary.

argument, for it shows that he can work—just not in the particular job he currently has.  The ADA provides no protection in this situation.

IBTC's motion for summary judgment on Colón's ADA claim (Count II) is granted.

## C.    Retaliation Under Title VII

"'An employee can establish a prima facie case of retaliation by proceeding under either the direct or indirect method.'"  *Lewis v. City of Chicago*, 496 F.3d 645, 655 (7th Cir. 2007) (quoting *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 459 (7th Cir. 2007)).  Under the direct method, a plaintiff must show (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) there was a causal connection between the two.  *Id.* (quoting *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)).  There is no question Colón suffered an adverse employment action: he was first suspended without pay and then terminated. It can also be assumed for purposes of this order that he engaged in protected activity, namely, he raised concerns that the Bilingual Group was being treated unfairly.[5]  However, Colón has not put forth sufficient evidence for a reasonable jury to infer causation, and thus his direct method claim fails.

It is undisputed that Colón refused to take at least one Ohio call and that he was offered supplemental training in response to his claim that he was no longer comfortable responding to Ohio calls.  It is also undisputed but that he did not attend the training when it was scheduled.  This is the stated reason for his termination.  The only evidence Colón has proffered to suggest that the suspension and termination resulted instead from his protected activity is the timing of events and the statement by his union representative, a month before he was terminated, that he was "making

_____

[5] Again, at this stage the court will assume *arguendo* that a discriminatory policy based on bilingual ability is pretext for discrimination based on national origin.

things hard" for himself. This is not sufficient. A close proximity in timing fails unless there is some other evidence in support. *Lewis*, 496 F.3d at 655; *Scaife v. Cook County*, 446 F.3d 735, 742 (7th Cir.2006) ("Close temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment provided that there is other evidence that supports the inference of a causal link."). Here, the proximity of events is not helpful to Colón. Colón's open letter was circulated in 2004, more than a year before he was suspended and terminated. His oral comments to IBTC management came *after* he refused to take the Ohio call, and after they had already scheduled a meeting to address this performance failing. The only evidence that even begins to suggest a causal link, then, is the comment by the union representative. Her comment is inadmissible hearsay that may not be considered for the truth of the matter asserted. It is not an admission by IBTC, but a statement from a third party, the union representative. This statement is insufficient to support a finding of causation.

Nor can Colón prevail under the indirect method of proof. The indirect method requires Colón to establish, among other things, that he was performing his job in accordance with the employer's legitimate expectations. *See Roney*, 474 F.3d at 460. Colón was not. Perhaps his initial refusal to take a call from Ohio could be excused—IBTC appears to have thought so given that it did not fire him immediately but merely required that he participate in refresher training for Ohio and agree to take calls from Ohio in the future. However, his subsequent refusal to take the training is a different matter. Colón admits that during the October 7, 2005 meeting he agreed to take the training. On October 12, 2005, when the training was to occur, his explanation for refusing to participate was that he was waiting to hear from his union representative. Colón points to no authority for the proposition that he is entitled to defy an order by responding that he is waiting to hear from the union. This is especially problematic given that Colón admits that the union

representative herself stressed to Colón during the October 7, 2005 meeting that he needed to answer calls from Ohio as part of his employment duties.

Colón has not come forth with sufficient evidence from which a reasonable jury could infer that his suspension and termination occurred as a result of activities protected by Title VII. IBTC's motion for summary judgment on Colón's retaliation claim (Count III) is granted.

### III. CONCLUSION

Defendant's motion for summary judgment is granted.

ENTER:

        /s/
_____
JOAN B. GOTTSCHALL
United States District Judge

DATED:   September 28, 2009